## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RALPH CHIDI JARPA,                    *

    Petitioner,                    *

    v.                    *        Civil Action No. PX 16-2649

GARRY MUMFORD, *et al.*,                    *

    Respondents.                    *

                      ******

## MEMORANDUM OPINION

Ralph Chidi Jarpa ("Petitioner" or "Mr. Jarpa") is currently being detained by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE")[1] at the Worcester County Detention Center in Snow Hill, Maryland, under 8 U.S.C. § 1226(c). ECF No. 1 at 3.

On July 1, 2016, Mr. Jarpa filed a Petition for Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2241 and Motion for an Order to Show Cause pursuant to 28 U.S.C. § 2243 (ECF No. 2), in which he challenges his mandatory detention pursuant to 8 U.S.C. § 1226(c) and seeks an individualized bond hearing. Respondents Garry Mumford, Dorothy Herrera-Niles, John McCarthy, Thomas Homan, Sarah Saldana, Jeh Johnson, and Loretta E. Lynch ("the Government" or "Respondents") filed a Response incorporating a Motion to Dismiss (ECF No. 6) on August 5, 2016. According to Respondents, this detention, authorized under § 1226(c), is not unreasonable in length. Petitioner filed a Response in Opposition to the Motion to Dismiss (ECF No. 9) and Respondents filed their Reply (ECF No. 14). The parties

---

[1] "On March 1, 2003, the [Immigration and Naturalization Service] was dissolved as an independent agency within the Department of Justice and its functions were transferred to the Department of Homeland Security." *Casas-Castrillon v. Dep't of Homeland Sec.,* 535 F.3d 942, 944 n.1 (9th Cir. 2008) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205).

were granted a hearing on the matter, which took place on September 12, 2016. ECF No. 15. This matter is ripe for determination.

For the reasons stated below, the Court will DENY Respondents' Motion to Dismiss and will GRANT Mr. Jarpa's request for habeas relief. Mr. Jarpa's Motion for an Order to Show Cause will be DENIED as MOOT. The Court directs the Government to provide Mr. Jarpa an individualized bond hearing within 10 days of the filing date of this Memorandum Opinion and Order or at a mutually agreeable date to the parties and the Immigration Judge. At such hearing, the Government will bear the burden of proving by clear and convincing evidence that Mr. Jarpa is a flight risk or a danger to the community to justify denial of bond.

## I.      BACKGROUND

Mr. Jarpa is a citizen of Liberia and a lawful permanent resident of the United States, entering the United States in 2004 as an asylee. ECF No. 1 at 7. He has lawfully lived in the United States for approximately twelve years and is a father to two children who are United States citizens by birth. ECF No. 1 at 8. In 2009, Mr. Jarpa was convicted of possession of marijuana, grand larceny, and resisting arrest for which he served a total of three months in jail. ECF No. 1 at 8; ECF No. 1-4 at 5. On March 30, 2015, Mr. Jarpa was convicted of possession with intent to distribute cocaine and was sentenced to fifteen years' imprisonment, all suspended but two years. ECF No. 1 at 8–9; Decision and Order of the Immigration Judge, ECF No. 1-4 at 14. Mr. Jarpa served a total of one-year imprisonment, and then on November 19, 2015, was transferred directly into the custody of U.S. Immigration and Customs Enforcement ("ICE").

ICE initiated removal[2] proceedings against Mr. Jarpa, seeking termination of his asylum status pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), for having

---

[2] Like the applicable statutes and regulations, this Opinion uses the terms "removal" and "deportation" interchangeably to refer to Petitioner's immigration proceedings.

been convicted of an aggravated felony drug trafficking offense as defined by § 101(a)(43)(B) of the INA. ECF No. 1 at 9; ECF No. 6 at 8–9. Shortly after Mr. Jarpa was transferred to ICE custody, he was granted a "*Joseph* hearing" at his request to determine if he is properly included within the category of detainees who are denied a bail hearing pursuant to § 1226(c). ECF No. 6-6; ECF No. 6 at 9; *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003) (citing *In re Joseph*, 22 I. & N. Dec. 799 (BIA 2011)) (Upon being taken into ICE custody, an alien may request a hearing to assert he is not subject to mandatory detention under § 1226(c) by demonstrating that it "is substantially unlikely" DHS will prevail on proving the underlying charge that serves as the basis for mandatory detention.). The Immigration Judge concluded that Mr. Jarpa was subject to mandatory detention under § 1226(c) in light of his recent criminal conviction. ECF No. 6-6; ECF No. 6 at 9. Mr. Jarpa did not appeal that decision to the Board of Immigration Appeals ("BIA"). ECF No. 6 at 9; *See* 8 C.F.R. § 1003.1(b)(7) (2016).

On February 18, 2016, DHS moved the court to terminate Mr. Jarpa's asylum status and sought an order of removal. *See* DHS Motion to Terminate Asylum Status, ECF No. 6-4. In response, Mr. Jarpa applied for adjustment of status and waiver under 8 U.S.C. § 1159. ECF No. 1 at 9; ECF No. 6 at 9. On May 18, 2016 the Immigration Judge found in Mr. Jarpa's favor, declining to terminate his asylum status and granting him adjustment of status to lawful permanent residence under 8 U.S.C. § 1159. *See* Decision and Order of the Immigration Judge, ECF No. 1-4. The Immigration Judge did not address Mr. Jarpa's application for protection pursuant to the Convention Against Torture. ECF No. 6 at 9 n.1. As a result, Mr. Jarpa's status as a lawful permanent resident with asylum status remained intact.

Mr. Jarpa nonetheless remained in ICE detention even after the Immigration Judge's favorable ruling. On June 10, 2016, the Government appealed, contending that Mr. Jarpa is

potentially removable under INA § 237(a)(2)(A)(iii) because his aggravated felony conviction precludes his eligibility for a waiver under 8 U.S.C. § 1159. ECF No. 1 at 9; ECF No. 6 at 10. Thus, even though Mr. Jarpa as of today stands adjudicated a lawful permanent resident with asylum status, he remains detained and has been given no individualized hearing to determine whether he should be released on bond or conditions. ECF No. 1 at 5.

## II.      JURISDICTION

Jurisdiction before this Court is proper under 28 U.S.C. §§ 2241 and 1331. *See also Demore*, 538 U.S. at 517 (holding district court retains jurisdiction to hear challenges to mandatory categorical detention pursuant to § 1226(c)).

## III.     DISCUSSION

Mr. Jarpa has been held in ICE custody for nearly eleven months without any individualized hearing to determine whether he may be released on conditions of supervision pending the final determination of his immigration proceedings. Accordingly, Mr. Jarpa contends his continued detention without any hearing is unreasonable and violates the Due Process Clause of the Fifth Amendment. More particularly, Mr. Jarpa argues that 8 U.S.C. § 1226(c) cannot constitutionally be read to allow indefinite and prolonged detention without a constitutionally adequate bond hearing.

The Government counters that indefinite categorical detention is unambiguously permissible under § 1226(c), and even if it were not, the length of detention in Mr. Jarpa's case is not unreasonably long, triggering alternate consideration. The Government further urges that the Court need not reach the merits of Mr. Jarpa's claims because he has failed to exhaust his administrative remedies prior to bringing the instant habeas petition. The Court disagrees with the Government on both points.

1. *Exhaustion of Administrative Remedies*

Ordinarily, petitioners seeking relief pursuant to 43 U.S.C. § 2241 are required to exhaust their administrative remedies before bringing suit. *See Timms v. Johns*, 627 F.3d 525, 530-31 (4th Cir. 2010). However, under the INA, exhaustion is statutorily required only on appeals to final orders of removal. 8 U.S.C. § 1252(d)(1). Mr. Jarpa does not challenge the merits of a final order of removal but rather seeks both a determination regarding the constitutionality of his prolonged detention without being afforded a bond hearing. Exhaustion is not required when a petitioner challenges the length of the detention as unreasonable and as a violation of constitutional rights to due process. *See Aguilar v. Lewis*, 50 F. Supp. 2d 539, 541 (E.D. Va. 1999) ("there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal"); *accord Galvez v. Lewis*, 56 F. Supp. 2d 637, 644 (E.D. Va. 1999) ("Exhaustion is not required when a petitioner challenges conditions imposed on bond.").

Because exhaustion is not required by statute, sound judicial discretion must govern the Court's decision of whether to exercise jurisdiction absent exhaustion. *Welch v. Reno*, 101 F. Supp. 2d 347, 351 (D. Md. 2000) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). The Supreme Court has recognized "at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *McCarthy*, 503 U.S. at 146.

One such circumstance exists when a "particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy*, 503 U.S. at 146-47. Here, continued loss of liberty without any individualized bail determination constitutes the kind of irreparable harm which forgives exhaustion. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[T]he deprivation of constitutional rights 'unquestionably constitutes

irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (stating, in the context of discussing irreparable harm, that "exhaustion might not be required if Bois were challenging her incarceration by the military or the ongoing deprivation of some other liberty interest"); *Grant v. Zemski*, 54 F. Supp. 2d 437, 442 (E.D. Pa. 1999); *see also Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986); *North v. Rooney*, C.A. No. 03-1811, 2003 WL 21432590, at *6 (D.N.J. June 18, 2003); *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 & n.20 (D.D.C. 2002). This is so because if Mr. Jarpa's continued detention is indeed unconstitutional, every subsequent day of detention without remedy visits harm anew. Further, because the harm is loss of liberty, it is quintessentially the kind of harm that cannot be undone or totally remedied through monetary relief. *Cf. Montgomery Cty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 783 F. Supp. 952, 958 (D. Md. 1992), *aff'd*, 993 F.2d 1538 (4th Cir. 1993) ("Ordinarily, economic injury is insufficient to establish irreparable harm because such injuries can be compensated for monetarily."). So as to avoid the continued irreparable harm, therefore, Jarpa need not exhaust administrative remedies here.

The two other circumstances prescribed by *McCarthy* which excuse exhaustion arise where "substantial doubt exists about whether the agency is empowered to grant meaningful redress," *McCarthy*, 503 U.S. at 147-48, or the potential decision-maker can be shown to have predetermined the issue. *Id.* at 148. According to the Government, § 1226(c) unquestionably mandates categorical detention and thus renders ICE powerless to grant meaningful redress. *See Vongsa v. Horgan*, 670 F. Supp. 2d 116, 121-23 (D. Mass. 2009) (collecting cases regarding futility and concluding that "the BIA has clearly and repeatedly upheld the denial of a bond hearing under the view that § 1226(c) mandates detention without bond"); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003) (stating that "[t]he Immigration Court and Board of

Immigration Appeals are courts of limited jurisdiction that cannot consider constitutional claims"
and that, therefore, "it would undoubtedly be futile to await further administrative hearings when
those proceedings cannot in any way address the constitutional claims at issue in this case");
*Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and
[the BIA] lack jurisdiction to rule upon the constitutionality of the Act and the regulations."); *see
also Arango-Aradondo v. I.N.S.*, 13 F.3d 610, 614 (2d Cir. 1994) ("[T]he BIA does not have
authority to adjudicate constitutional issues . . . ."). Not surprisingly, therefore, the BIA has
consistently refused to hear challenges to prolonged statutory mandatory detention. *See In re
Thaxter*, A 078-494-561 (BIA Aug. 27, 2014), ECF No. 9-2; *In re Odulene Dormescar*, 2010
WL 3780685 (BIA Sept. 3, 2010); *In re Bourguignon*, A041 055 090, 2009 WL 2218115 (BIA
July 14, 2009). In light of the Government's consistent position upholding categorical detention
without any meaningful individualized bail review, exhaustion here would be futile. *See Welch*,
101 F. Supp. 2d at 352 (finding that administrative exhaustion is not required when the BIA has
no power to address the constitutional challenge).

In exercising this discretion, the Court must decide whether the "twin purposes of
protecting administrative agency authority and promoting judicial efficiency" are outweighed by
Mr. Jarpa's interest in immediate adjudication of his claim by this court. *Volvo GM Heavy Truck
Corp. v. U.S. Dep't of Labor*, 118 F.3d 205, 208-09 (4th Cir. 1997) (quoting and citing
*McCarthy*, 503 U.S. at 144-45); *see also Bowen v. City of New York*, 476 U.S. 467, 484 (1986)
("[A]pplication of exhaustion doctrine is intensely practical . . . The ultimate decision of whether
to waive exhaustion . . . should be guided by the policies underlying the exhaustion
requirement.") (internal quotations omitted).

In this particular circumstance, permitting a decision on the petition now does not present any compelling threat to agency authority or judicial efficiency. Mr. Jarpa is mandatorily detained under 8 U.S.C. § 1226(c). In his removal proceedings, the Immigration Judge declined to terminate his asylum status and adjusted his status to that of lawful permanent residence under 8 U.S.C. § 1159. Adjudication of the detention issue by this Court will not unduly burden administrative agency authority any further than it has already burdened itself.

Furthermore, the Government elected to appeal the Immigration Judge's decision on adjustment of status, thereby providing the agency with ample opportunity to exercise its authority whether those findings are correct. On the other hand, Mr. Jarpa's deportability has extended for over ten months and additional delay attendant to exhaustion "would just contribute to the troubling delay [Mr. Jarpa] has already experienced in attempting to resolve [his] immigration status." *Vongsa*, 670 F. Supp. 2d at 123 (citing *McCarthy*, 503 U.S. at 146-47). The balancing of these factors, therefore, weighs in favor of deciding Mr. Jarpa's claim now. *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 464 (D. Mass. 2010); *Madrane v. Hogan*, 520 F. Supp. 2d 654, 668 n.16 (M.D. Pa. 2007) (reaching habeas claim even though petitioner had never sought a custody review or bail hearing from the Immigration Judge).

2. *Mandatory Detention and Due Process*

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. These protections extend to aliens facing deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Accordingly, immigration judges are empowered to conduct bail hearings for aliens held pending possible deportation so

that they are not deprived of their liberty without due process. *Lora v. Shanahan*, 804 F.3d 601, 608 (2d Cir. 2015).

Petitioner, however, is held pursuant to 8 U.S.C. § 1226(c) which, on its face, can be read to deny a detention hearing to a circumscribed class of alien facing possible deportation after having been convicted of an aggravated felony. *Demore*, 538 U.S. at 517-18. Section 1226(c) provides that "[t]he Attorney General shall take into custody any alien who is deportable by reason of having committed an offense covered in section . . . 1227(a)(2)(A)(iii)[.]" 8 U.S.C. § 1226(c)(1)(B) (emphasis added). Almost 20 years ago, "Congress adopted section 1226(c) in an effort to strengthen and streamline the process of removing deportable criminal aliens 'against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens' and 'evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their removal proceedings.'" *Lora*, 804 F.3d at 604 n.5 (quoting *Demore*, 538 U.S. at 518-19); *see also Demore*, 538 U.S. at 521 ("Some studies presented to Congress suggested that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country."). However, both the deportation process and the surrounding jurisprudence have evolved over the last two decades, warranting close scrutiny of § 1226(c)'s application to Mr. Jarpa's detention.

### a.   The Supreme Court's Guidance in *Demore*, *Zadvydas* and *Clark*

Importantly, since Congress passed § 1226(c), the United States Supreme Court has established that indefinite and indeterminate detention without an individualized bail review hearing cannot pass constitutional muster. In *Zadvydas v. Davis*, 533 U.S. 678, 688-89 (2001), the Supreme Court addressed the constitutionality of another immigration detention provision, 8

U.S.C. § 1231(a)(6), which automatically holds aliens for a 90-day period following the issuance of a formal order of removal. There, petitioners challenged continued detention beyond the 90-day time frame set forth in § 1231(a)(6) without granting them an individualized bail hearing.

Emphasizing that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court applied the doctrine of constitutional avoidance to read an implicit temporal limitation on categorical detention without a hearing. *Zadvydas*, 533 U.S. at 682, 689. Relying on the fundamental precept that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects," *Id.* at 690, the Supreme Court underscored that "the Due Process Clause applies to all 'persons' within the United States, including aliens." *Id.* at 693.

The Supreme Court further reasoned that immigration proceedings "are civil, not criminal, and . . . nonpunitive in purpose and effect." *See id.* at 690. Accordingly, prolonged detention in the civil context without a hearing requires "special justification" that "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (quotation marks omitted). As applied to the petitioners in *Zadvydas*, the Supreme Court could discern no special justification for indefinitely holding criminal aliens in civil detention who were not especially dangerous and who had little chance of actually being removed. *Id.* at 690-91.

The Supreme Court reiterated that "[i]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may

be avoided."[3] *Id.* at 689 (quotation marks and citations omitted). As "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause, *Id.* at 690, the Supreme Court determined that Congress must have included an implicit temporal limitation in § 1231(a)(6). *Id.* at 682, 699. That limitation, in turn, allowed for habeas relief after the criminal alien's detention exceeded the "period reasonably necessary to secure removal." *Id.* at 699.

The Supreme Court further instructed that the reasonableness of the length of a criminal alien's detention should be measured "primarily in terms of the statute's basic purpose." *Id.* at 699. It provided a bright-line rule for administrative ease, and held that, after six months in post-removal-order status, if the alien provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the government does not meet its burden, the alien must be released from confinement. *See id.*

Two years after *Zadvydas*, in *Demore v. Kim*, 538 U.S. 510 (2003), the high Court once again returned to the constitutionality of indefinite detention absent an individualized bail hearing. There, the petitioner challenged his categorical detention under § 1226(c), the relevant statute here. *Demore*, 538 U.S. at 513. Unlike Mr. Jarpa, however, the petitioner in *Demore* sought habeas relief almost immediately upon entering immigration custody, and argued that his detention under § 1226(c) without a hearing violated due process at the outset. *Demore*, 538 U.S. at 514.

The Supreme Court rejected petitioner's challenge, holding that § 1226(c) did not violate the Due Process Clause of the Fifth Amendment. *Demore*, 538 U.S. at 513. However, the Court

---

[3] The Supreme Court explained that the doctrine of constitutional avoidance reflects the basic assumption that Congress intends to legislate within constitutional limits. *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998).

circumscribed its decision in an important and material way. The Court explained that because

Congress was "justifiably concerned" that the rate at which deportable aliens in this category flee

or commit new crimes, mandatory categorical detention may be necessary "for the *brief* period"

contemplated by expedited removal proceedings. *Id.* at 513. The Court further defined what it

meant by brevity of detention proceedings as "roughly a month and a half in the vast majority of

cases and about five months in the minority of cases in which the alien choose to appeal." [4] *Id.* at

530. Based on these critical observations, the Supreme Court held that "Congress . . . may

require that persons . . . be detained for the *brief* period necessary for their removal proceedings,"

without the opportunity to argue for bond. *Id.* at 513 (emphasis added). Indeed, "[r]eferences to

the brevity of mandatory detention under § 1226(c) run throughout *Demore*." *Casas-Castrillon v.*

*Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (internal quotations and citations

omitted). Accordingly, *Demore*, fairly read, holds § 1226(c) constitutional only where the

detention is "brief."

Indeed, Justice Kennedy's oft-cited concurrence, supplying the majority's fifth critical

vote,[5] reaffirms temporal limitations that *Demore* recognized in § 1226(c):

> [S]ince the Due Process Clause prohibits arbitrary deprivations of
> liberty, a lawful permanent resident alien such as [Kim] could be
> entitled to an individualized determination as to his risk of flight

---

[4] The Court provided the following statistics:

> The Executive Office for Immigration Review has calculated that, in 85% of the cases in which
> aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time
> of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the
> decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average
> of four months, with a median time that is slightly shorter.

*Demore*, 538 U.S. at 529.

[5] This Court places particular importance on Justice Kennedy's concurrence. "When a fragmented Court
decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding
of the Court may be viewed as that position taken by those Members who concurred in the judgments on
the narrowest grounds." *Campbell v. Polk*, 447 F.3d 270, 290 (4th Cir. 2006) (quoting *Marks v. United*
*States*, 430 U.S. 188, 193 (1977)).

> and dangerousness if the continued detention became unreasonable or unjustified. Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. That is not a proper inference, however, either from the statutory scheme itself or from the circumstances of this case.

*Id.* at 532-33 (Kennedy, J., concurring) (citation omitted).

Thus, while *Demore* upheld § 1226(c)'s provision to petitioner's challenge, it did so with a strong constitutional caveat that when continued mandatory detention becomes unreasonable or unjustified, due process demands an individualized bail hearing. *Id.*

Then, two years later, in *Clark v. Martinez*, 543 U.S. 371 (2005), the high Court revisited the constitutionality of prolonged detention as applied to *inadmissible* aliens who are pending removal beyond the 90-day period proscribed in § 1231. Although the main thrust of *Clark* was to uniformly read § 1231 "without differentiation" in post-removal proceedings regardless of an alien's initial status, it provided the Court yet one more opportunity to emphasize the temporal limitation necessary to avoid constitutional infirmity of categorical detention. *Id.* at 378. The Court held that "since the [g]overnment has suggested no reason why the period of time reasonably necessary to effect removal is longer for an inadmissible alien, the six month presumptive detention period we prescribed in *Zadvydas* applies." *Id.* at 386.

**b.  Jurisprudence since *Demore*, *Zadvydas* and *Clark***

The Government relies heavily on *Demore*, arguing that § 1226(c) permits prolonged detention lasting months, if not years, because at some point deportation proceedings will conclude. Yet the Government glosses over Justice Kennedy's critical concurrence underscoring that prolonged detention at some point may indeed become "unreasonable and unjustified" warranting individualized bail review proceedings to survive constitutional scrutiny. *See* ECF

13

No. 6 at 11–14. What is more, the Government, when pressed at oral argument, provided no principled distinction for reading a presumptive *six-month* period of unreasonableness as applied to detainees who have been fully and finally *adjudicated deportable* (as in *Zadvydas* and *Clark*) and petitioner who is lawfully in the United States and would be home with his family but for the Government's appeal.

By contrast, six U.S. Courts of Appeal and countless district courts, reading *Demore* and *Zadvydas* together, have all rejected the Government's position and construed § 1226(c) to contain an implicit time limit so as to avoid or remedy due process violations. *See, e.g., Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1214 (11th Cir. 2016) ("We too construe § 1226(c) to contain an implicit temporal limitation at which point the government must provide an individualized bond hearing to detained criminal aliens whose removal proceedings have become unreasonably prolonged."); *Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016) (stressing the concept that "a categorical, mandatory, and indeterminate detention raises severe constitutional concerns" in recognizing "that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention that can be considered justifiable under that statute," and finding "it necessary to read an implicit reasonableness requirement into the statute"); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ("[W]e conclude that, to avoid constitutional concerns, § 1226(c)'s mandatory language must be construed to contain an implicit reasonable time limitation . . . ." (quotation marks omitted)); *Lora*, 804 F.3d at 606 ("[W]e hold that, in order to avoid significant constitutional concerns surrounding the application of section 1226(c), it must be read to contain an implicit temporal limitation."); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 475 (3d Cir. 2015) ("As we said in *Diop*, section 1226(c) 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must

make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.'") (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011)); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) ("Therefore, we hold that the INS may detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner. If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings."); *see also Gordon v. Shanahan*, No. 15 CV. 261, 2015 WL 1176706, at *4 (S.D.N.Y. Mar. 13, 2015); *Francois v. Napolitano*, 2013 WL 4510004, at *2 (D.N.J. Aug. 23, 2013); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 381 (M.D. Pa. 2012); *Martinez v. Muller*, 2012 WL 4505895, at *5 (D.N.J. Sept. 25, 2012) (10 months); *Nwozuzu v. Napolitano*, No. 12-3963, 2012 WL 3561972, at *4 (D.N.J. Aug. 16, 2012); *Monestime v. Reilly*, 704 F. Supp. 2d 453 (S.D.N.Y. 2010).

Following Justice Kennedy's concurrence in *Demore*, the growing chorus of lower-court jurisprudence all fundamentally impose a "reasonableness" limitation upon the duration of detention that can be considered constitutionally justifiable under that statute. *See Reid*, 819 F.3d at 494; *Lora,* 804 F.3d at 606; *Rodriguez*, 715 F.3d at 1138; *Diop*, 656 F.3d at 232-33; *Ly v. Hansen,* 351 F.3d 263, 269-70 (6th Cir. 2003). Once detention becomes unreasonably prolonged, the detainee must be afforded a bond hearing to fulfill the purposes of the mandatory detention statute. *See generally*, *Diop*, 656 F.3d at 232.[6]

---

[6] On June 20, 2016, the Supreme Court granted certiorari in *Jennings v. Rodriguez. See* 136 S. Ct. 2489 (June 20, 2016) (No. 15-1204) on (1) "[w]hether criminal or terrorist aliens who are subject to mandatory detention under Section 1226(c) must be afforded bond hearings, with the possibility of release, if detention lasts six months"; and (2) "[w]hether, in bond hearings for aliens detained for six months under Sections 1225(b), 1226(c), or 1226(a), the alien is entitled to release unless the government demonstrates by clear and convincing evidence that the alien is a flight risk or a danger to the community; whether the length of the alien's detention must be weighed in favor of release; and whether new bond hearings must be afforded automatically every six months." Petition for a Writ of Certiorari, *Jennings v. Rodriguez*, 136

Although the Fourth Circuit has yet to squarely decide this issue, this Court is persuaded and thus guided by our sister circuits. Once pre-removal § 1226(c) detention becomes unreasonably prolonged, the detainee must be afforded an individualized bond hearing. *See Demore*, 538 U.S. at 532 (Kennedy, J., concurring).

In this Court's view, the harder question is whether Mr. Jarpa has been detained for an unreasonable period of time and by what measure. Other circuits have addressed this question in two distinctly different ways. *See Sopo*, 825 F.3d at 1214. The First, Third, Sixth, and Eleventh Circuits have adopted a case-by-case approach, "requiring an assessment of all of the circumstances of any given case" to determine whether detention without an opportunity for a bond hearing is unreasonable. *Id.* at 1215 (quoting *Diop*, 656 F.3d at 234); *see also Reid*, 819 F.3d at 498; *Ly*, 351 F.3d at 271. "Under this approach, every detainee must file a habeas petition challenging detention, and the district courts must then adjudicate the petition to determine whether the individual's detention has crossed the 'reasonableness' threshold, thus entitling him to a bail hearing." *Lora*, 804 F.3d at 614; *see also Ly*, 351 F.3d at 272.

These circuits collectively consider myriad factors in assessing the reasonableness of a petitioner's continued detention without an individualized bond hearing. These factors include: (1) the length of time that the criminal alien has been detained without a bond hearing; (2) the reason for prolonged detention; (3) whether any impediments exist to final removal if ordered; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; (5) whether the facility for the civil immigration

---

S. Ct. 2489 (No. 15-1204). Because the issues in *Jennings* implicate the Court's decision here, the Government asks the Court to delay its ruling pending the outcome of *Jennings*. ECF No. 14 at 2. The Court declines to do so. Mr. Jarpa's continued detention without a hearing is, in this Court's view, unreasonable and violates due process. *See infra* at p. 22. Delaying determination, therefore, would unfairly visit continued harm to Mr. Jarpa, especially since briefing in *Jennings* has not been completed and resolution is, at best, several months away.

detention is meaningfully different from a penal institution for criminal detention; and (6) the foreseeability of proceedings concluding in the near future (or the likely duration of future detention). *Sopo*, 825 F.3d at 1217-19 (collecting factors and citing *Chavez-Alvarez*, 783 F.3d at 478 and *Ly*, 351 F.3d at 271); *Reid*, 819 F.3d at 500. Although not exhaustive, courts identify these factors "only to help resolve the case before us and to provide guideposts for other courts conducting such a reasonableness review." *Id.* at 1218 (quoting *Reid*, 819 F.3d at 501); *see also Diop*, 656 F.3d at 232-33 ("At a certain point, continued detention becomes unreasonable . . . This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances.").

In contrast, the Second and Ninth Circuits, using *Zadvydas* as the guide, have adopted a bright-line rule, holding that "the government's 'statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness.'" *Lora*, 804 F.3d at 614 (quoting *Rodriguez*, 715 F.3d at 1133). Under this bright-line rule, every alien detained under § 1226(c) "must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Id.* at 616. The Second Circuit, in adopting the six-month rule, reasoned that the rule eliminates "inconsistency and confusion" and ensures that "similarly situated detainees receive similar treatment." *Lora*, 804 F.3d at 614-16. Mr. Jarpa's continued detention under either test merits an immediate bail hearing.

### c. Mr. Jarpa's Detention

At the time of this Opinion, Mr. Jarpa will have been held in mandatory detention without a bond hearing for over ten months. Thus, if the Court followed the Second and Ninth circuits, Mr. Jarpa's detention exceeds six months, triggering an individualized bail review. *Lora*, 804 F.3d at 614 (quoting *Rodriguez*, 715 F.3d at 1133).

Under a case-by-case approach, the Court at the outset notes that Mr. Jarpa's claim is among the strongest of similarly situated petitioners. Critically, *Demore* contemplated that prolonged detention for several months may be appropriate "in the minority of cases in which *the alien* chooses to appeal." 538 U.S. at 530 (emphasis added). An alien appeal within this limited timeframe leaves in place the presumption of removability and promptness remains. *Reid*, 819 F.3d at 500 n.4. But this same logic does not apply where Mr. Jarpa has prevailed before an immigration judge and the Government appeals. *Id.* "In such cases, the presumption of ultimate removability is weakened, rendering the alien's continued categorical detention far less reasonable." *Id.*

Astonishingly, of the twenty-six opinions this Court reviewed in which lower courts have granted petitioners' relief, no petitioner had already won his removal proceedings, had his status adjusted, and yet remained in detention without even the opportunity to seek individual consideration for release. The closest, *Francois v. Napolitano*, No. CIV.A. 12-2806 FLW, 2013 WL 4510004 (D.N.J. Aug. 23, 2013), provides important guidance in this regard. There, the district court found the petitioner's detention of twelve months under § 1226(c) unreasonable. The court relied heavily on the immigration judge's pronouncement that he "intended to" cancel the petitioner's removal and find in petitioner's favor. *Francois*, 2013 WL 4510004, at *6. The *Francois* court reasoned that "[p]etitioner's mandatory detention has become unreasonable," precisely because "the IJ announcement last month that he intends to grant Petitioner's Application for cancellation of removal." *Id.* The immigration judge's intended cancellation signaled to the district court that "Petitioner is not the type of alien who should be removed, even in light of Petitioner's criminal history." *Id.* Accordingly, the court announced that "[w]ith the

IJ's conclusion that Petitioner is not so dangerous as to require removal, it is unclear how his continued mandatory detention for that same reason is reasonable." *Id.*

As in *Francois*, Mr. Jarpa has already prevailed in his underlying proceedings. He is, at present, a lawful permanent resident who would be home but for the Government's appeal of the Immigration Judge's decision. *See Lennon v. Green*, No. 16-4483 (KM), 2016 WL 4491833, at *2 (D.N.J. Aug. 24, 2016) (finding habeas petition moot where petitioner was released from ICE custody after immigration judge granted petitioner's application for waiver of inadmissibility and request for an adjustment of status). Thus, as in *Francois*, where an immigration judge found Mr. Jarpa worthy of continued lawful status, this Court is hard pressed to find that continued prolonged detention without a hearing satisfies the purpose of § 1226(c) as applied here.

Moreover, Mr. Jarpa's detention, if left unaddressed, has no clear endpoint in sight. *See Reid*, 819 F.3d at 500 (considering the foreseeability of proceedings concluding in the near future as a factor in evaluating the reasonableness of detention). As the parties conceded at oral argument, no one can predict how long this appeal may take or its outcome. Equally important, even if Mr. Jarpa's favorable ruling is reversed, his case will be remanded for adjudication of his legitimate alternate grounds for cancelling removal, further delaying the final adjudication of his proceedings by months if not years. Then, once again, the Immigration Judge's eventual order will be subject to review by the BIA and potentially by the Fourth Circuit. *See Gordon v. Shanahan*, No. 15 CV. 261, 2015 WL 1176706, at *4 (S.D.N.Y. Mar. 13, 2015). Thus, the length of Mr. Jarpa's detention, combined with his status as a lawful permanent resident who won his proceedings below, counsel in favor of granting his requested relief.

The remaining applicable factors either bend toward this Court's ordering an individualized detention hearing or do not advance the analysis either way. With regard to the

length and nature of Mr. Jarpa's detention, Mr. Jarpa has been held in a county jail—a "prison-like facility"—for over ten-months. *See Sopo*, 825 F.3d at 1221 (comparing the current conditions of petitioner's civil detention to his punitive, criminal confinement). For the last several months, he has been detained even though he is in fact a lawful permanent resident who has already served his prison sentence for the underlying conviction. What is more, the length of his *civil immigration detention* is almost as long as the punishment he received on the underlying criminal conviction. *Sopo*, 825 F.3d at 1221; *see also Gordon v. Shanahan*, No. 15 CV. 261, 2015 WL 1176706, at *4 (S.D.N.Y. Mar. 13, 2015) (detention for eight months runs afoul of the Due Process Clause); *Francois*, 2013 WL 4510004, at *2 (twelve-month detention unreasonable where the immigration judge announced intended ruling in petitioner's favor); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 381 (M.D. Pa. 2012) ("pre-removal detention becomes universally questionable" around the seven-month mark); *Martinez v. Muller*, 2012 WL 4505895, at *5 (D.N.J. Sept. 25, 2012) (10 months); *Nwozuzu v. Napolitano*, No. 12-3963, 2012 WL 3561972 at *4 (D.N.J. Aug. 16, 2012) ("any detention exceeding five months is presumptively unreasonable"); *Monestime v. Reilly*, 704 F. Supp. 2d 453 (S.D.N.Y. 2010) (eight months unreasonable).

With regard to whether either party has delayed proceedings to manipulate the propriety of an individualized detention hearing, neither side can be accused of that here. *See Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring) (citing the lack of evidence of "an unreasonable delay by the [Government] in pursuing or completing deportation proceedings"); *Young v. Aviles*, 99 F. Supp. 3d 443, 455 (S.D.N.Y. 2015); *cf. Ly*, 351 F.3d at 272 (noting that the petitioner's detention was lengthened due to "the INS . . . drag[ging] its heels indefinitely in making a decision"). Mr. Jarpa and his counsel have been prompt and diligent in pursuing his bona fide claim in which he

has emerged victorious. *See Leslie v. Attorney Gen.*, 678 F.3d at 271 (timely pursuit of bona fide challenges cannot be held against petitioner). Similarly, the Government has pursued its claims with diligence and minimal delay. Concerns regarding gamesmanship and manipulation of the docket to invite unreasonable delay simply are not at play.

The Government singularly relies on *Elsaidy v. Rau*, No. WDQ-10-981, 2010 WL 3222510 (D. Md. Aug. 16, 2010) to support Mr. Jarpa's continued detention. There, the Court rejected Mr. Elsaidy's challenge to his prolonged detention, citing *Demore*. *Id.* at *1. The Court principally relied on the fact that Mr. Elsaidy, an Egyptian alien with no lawful status who was detained upon crossing the border, had repeatedly delayed his proceedings, rendering his 28-month detention much of his own making. *Id.* at *2. In rejecting *Elsaidy's* claims, the Court's analysis was brief and limited, likely because the case predated the wealth of lower court jurisprudence addressing the constitutionality of prolonged 8 U.S.C. § 1226(c) detentions. Thus, *Elsaidy* provides little guidance.

In sum, the length of Mr. Jarpa's detention now exceeding ten months, coupled with the unique circumstances of this case—particularly that he stands adjudicated lawful permanent resident—supports this Court's determination that Petitioner's continued detention without an individualized bail hearing under § 1226(c) is no longer reasonable. *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). Accordingly, this Court will grant Petitioner's requested relief and order that a timely hearing be conducted.

### d.  Mr. Jarpa's Bond Hearing

Having found that Mr. Jarpa's continued detention without a hearing has become unreasonable, the Court must now address the constitutionally adequate burden and quantum of proof to be used at the detention hearing. Because petitioners like Mr. Jarpa are subject to

categorical detention at the outset, the Immigration Judge must be given some guidance, for the operative statute (§ 1226(c)) provides none. The Government reflexively asks this Court to treat Mr. Jarpa as if he were detained under § 1226(a), a statute providing for a detention hearing upon entry into ICE custody for other detainees who face removal for reasons different than Mr. Jarpa. But as Mr. Jarpa points out, he never was afforded the benefit of an initial detention hearing under § 1226(a). Also, he has now been detained almost a year in addition to the year of prison service. Mr. Jarpa's prolonged detention—practically and as a matter of constitutional sufficiency—requires more.

Disagreement among the Circuits exists regarding which party shoulders the burden and quantum of proof at the individualized bond hearing. The First and Eleventh Circuit place the burden of proof on the criminal alien who must demonstrate that he is neither a flight risk nor a danger to others. *Sopo*, 825 F.3d at 1220 (adopting the procedures from 8 C.F.R. § 1236.1(c)); *Reid*, 819 F.3d at 491, 501-02 (summarily affirming the district court's ruling that Reid was entitled to a bond hearing under the regulations effectuating 8 U.S.C. § 1226(a)). The Eleventh Circuit in so doing announced a "default rule," as applied to other detainees eligible for release under 8 U.S.C. § 1226(a).

The Second, Third and Ninth Circuits, by contrast, place the burden of proof on the government.[7] *See Diop*, 656 F.3d at 233; *Rodriguez*, 804 F.3d at 1087; *Lora*, 804 F.3d at 616. *Diop*, 656 F.3d at 233 ("§ 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and danger to the community.") The Second and Ninth Circuits

---

[7] The Sixth Circuit, in *Ly*, did not explicitly address the burden of proof at a bond hearing for a § 1226(c) detainee. 351 F.3d at 273. The court did, however, intimate that the government should bear the burden of proving the necessity of continued detention, noting that "[w]hen actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a strong special justification." *Id.* (internal quotation marks omitted).

further require that the government prove by "clear and convincing evidence that [a criminal] alien is a flight risk or a danger to the community to justify denial of bond." *Rodriguez*, 804 F.3d at 1087 (quotation marks omitted); *see Lora*, 804 F.3d at 616.

This Court will follow the Second and Ninth Circuits in placing that burden on the Government to demonstrate by clear and convincing evidence why further detention is warranted to meet risk of flight or danger to the community. *Rodriguez*, 804 F.3d at 1087; *see Lora*, 804 F.3d at 616. In so deciding, it is important to begin with first principles. As a general matter, when restriction of individual liberty has triggered due process concerns, "a heightened burden of proof [is placed] on the State," to justify continued detention. *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996). *See also Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (termination of parental rights) (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979) (civil commitment proceeding)). Put differently, where detention is constitutionally permissible, it is so only because "adequate procedural protections . . . ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Casas-Castrillon*, 535 F.3d at 950 (quoting *Zadvydas*, 533 U.S. at 690).

In the context of civil commitment proceedings, the Supreme Court "time and again [has] rejected laws that place on the individual the burden of protecting his or her fundamental rights." *Tijani v. Willis*, 430 F.3d 1241, 1244 (9th Cir. 2005) (Tashima, J., concurring) ("When such a fundamental right is at stake . . . the Supreme Court has insisted on heightened procedural protections to guard against the erroneous deprivation of that right.") (citing *Cooper v. Oklahoma*, 517 U.S. 348 (1996) (unanimously rejected a state-law presumption that a defendant was competent to stand trial unless that defendant established his incompetence by clear and convincing evidence); *Foucha v. Louisiana*, 504 U.S. 71 (1992) (holding unconstitutional statute

that placed on civilly committed individuals the burden of proving that they were not a danger to the public before allowing their release); and *Addington*, 441 U.S. 418 (1979) (individual could not be civilly committed based upon a finding of mental illness by a preponderance of the evidence)); *Sopo*, 825 F.3d at 1232 ("Because of the harsh practical realities of confinement, the Supreme Court has historically afforded very strong procedural protections to individuals facing prolonged civil detention.") (Pryor, J., dissenting in part and concurring in part) (citing *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (noting that the Supreme Court has upheld civil detention, but only "provided the confinement takes place pursuant to proper procedures and evidentiary standards") and *Rodriguez*, 804 F.3d at 1074-76 (collecting cases)).

Although the Fourth Circuit has yet to address the narrow issue here, its analysis of similar constitutional question in *United States v. Comstock*, 627 F.3d 513 (4th Cir. 2010), merits discussion. There, the Court was asked to determine whether 18 U.S.C. § 4248, a civil commitment statute applicable to sex offenders, affords adequate procedural protections by requiring the government to prove by "**clear and convincing evidence** that the certified person has engaged or attempted to engage in sexually violent conduct or child molestation and is sexually dangerous to others." *Comstock*, 627 F.3d at 515 (emphasis added). Thus, the Fourth Circuit in *Comstock* grappled with the burden and quantum of proof in post-prison civil detention hearings to satisfy due process.

The *Comstock* Court held that § 4248 passes constitutional muster precisely because the government bears the burden of demonstrating by clear and convincing evidence that individualized detention fulfills the commitment statute's purpose. *Id.* ("proof by clear and convincing evidence sufficed to justify civil commitment.") In so holding, the Fourth Circuit

noted that the Supreme Court "has never retreated" from its long history of mandating in civil commitment proceedings a similar proof scheme. *Id.* at 524 (collecting cases).

Mr. Jarpa, like the detainee in *Comstock*, is held not as a criminal defendant, but pursuant to civil detention proceedings. Also like the detainee in *Comstock,* Mr. Jarpa's detention is predicated on prior criminal conduct which places him into a discrete class of persons whose potential risk to society warrant possible restriction of individual freedoms. Accordingly, against the backdrop of well-settled jurisprudence on the quantum and burden of proof required to pass constitutional muster in civil detention proceedings generally, it makes little sense to give Mr. Jarpa at this stage fewer procedural protections than those provided to the detainee in *Comstock*. That Mr. Jarpa faces continued immigration proceedings as opposed to civil commitment proceedings is of little material difference because the common question remains: what burden and quantum of proof is necessary at the hearing to ensure that continued detention fulfills the purpose of the respective commitment statute and is not improperly punitive. *Compare Comstock*, 627 F.3d at 521 (in civil commitment proceeding under 18 U.S.C. § 4248, "state power is not exercised in a punitive sense," but based on finding of dangerousness to community), *with Demore*, 538 U.S. at 513 ("brief period necessary for their removal proceedings" because Congress was "concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings").

The Court also cannot ignore that Petitioner has already been deprived of a liberty interest under circumstances which violate his right to due process. *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *accord Tijani*, 430 F.3d at 1245 (Tashima, J., concurring) ("[T]he Supreme Court has consistently adhered to the principle that the risk of erroneous deprivation of a fundamental right may not be placed on the individual.") (citing *Cooper v. Oklahoma*, 517 U.S.

348, 366 (1996) (rejecting a state-law presumption that a defendant was competent to stand trial unless that defendant established his incompetence by clear and convincing evidence because of "no sound basis for allocating to the criminal defendant the large share of the risk which accompanies a clear and convincing evidence standard.") and *Addington*, 441 U.S. 418, 427 (1979) (In a civil commitment proceeding, "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state . . . [T]he individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence.")).

Placing the burden on Mr. Jarpa at the hearing, therefore, would be inconsistent with having found his continued detention unconstitutional. This is so because were Mr. Jarpa required to prove that he is neither a flight risk nor a danger would also logically mean that he is *presumed* validly and constitutionally detained unless he demonstrates otherwise. This presumption would run contrary to the Court's determination on the unconstitutionality of his continued detention absent a hearing. Thus, to ensure that Mr. Jarpa's liberty interests are wholly protected and practically effectuated, this Court will require the Government to "justify confinement" by clear and convincing evidence.

Finally, from a practical perspective, it bears noting that to place the burden on Mr. Jarpa at this juncture visits a special unfairness on him. Prolonged detention undoubtedly weakens an individual's ties to society. Employment and education opportunities are severed, family relations are strained, and residences are uprooted. It would create an unusual disadvantage to now make Mr. Jarpa marshal the very evidence that has been compromised, if not outright destroyed, by the prolonged detention that triggered increased procedural protections in the first

place. *See Sopo*, 825 F.3d at 1235 (Pryor, J., dissenting in part and concurring in part). Thus, at Mr. Jarpa's bond hearing, the Government must prove by clear and convincing evidence that he is a flight risk or a danger to the community to justify denial of bond.

3. *Immediate Custodian Rule and §1226(c)*

The Government finally challenges Mr. Jarpa's joinder of all defendants apart from Garry Mumford, the Warden of the Worchester County Detention Center where he is presently held, citing the "immediate custodian rule" in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). ECF No. 6 at 42. Petitioner, by contrast, maintains that "because of the distinctive nature of immigration detention . . . the immediate custodian rule is not apposite, and the federal officials who have authority to release Mr. Jarpa or to execute a court-ordered bond hearing are properly named." ECF No. 9 at 21.

In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court held that "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 436. But the Supreme Court in *Padilla* expressly withheld judgement on who would be the proper respondent in a habeas petition filed by "an alien detained pending deportation." *Id.* at 435 n.8. In so doing, the Supreme Court declined to resolve the split among the lower courts regarding whether the immediate custodian rule applies in the immigration detention context. *Id.* Therefore, the Government's reliance exclusively on the holding in *Padilla* does little to support its contention that the Respondents are improperly named in Mr. Jarpa's petition.

Although the Fourth Circuit has yet to reach this issue, other Circuits diverge on the application of the immediate custodian rule to immigration proceedings. Many courts have

applied the immediate custodian rule to find that the Warden of the facility housing the detainee is the only proper respondent in constitutional challenges to immigration proceedings. *See, e.g.*, *Thakur v. Morton*, No. ELH-13-2050, 2013 WL 5964484, at *2 (D. Md. Nov. 7, 2013); *Nabil v. Holder*, No. JFM-10-1786, 2010 WL 4485894, at *1 (D. Md. Nov. 9, 2010); *Kam v. Kavanagh*, No. RWT-09-2227, 2009 WL 4015411, at *1 (D. Md. Nov. 19, 2009) (petition later dismissed as moot in *Kam v. Kavanagh*, No. RWT-09-2227, 2009 WL 5109620, at *1 (D. Md. Dec. 16, 2009)); *Ahmed v. Shockley*, No. RDB-09-1742, 2009 WL 2588550, at *2 (D. Md. Aug. 19, 2009). *See also Nken v. Napolitano*, 607 F. Supp. 2d 149, 154 (D.D.C. 2009) (DHS Secretary was not a proper respondent); *Zhen Yi Guo v. Napolitano*, No. 09 Civ. 3023-PGG, 2009 WL 2840400, at *2 (S.D.N.Y. Sep. 2, 2009) (warden is only proper respondent); *Yoder v. Frederking*, No. 04-CV-905-DRH, 2005 WL 2428699, at *2 (S.D. Ill. Sept. 30, 2005) (petitioner improperly named Illinois Attorney General, but not the warden of the facility in which he was detained).

However, in none of those cases did the Court *grant* the petitioner's requested relief; thus, the dismissal of respondents was a mere formality. For example, in *Thakur*, 2013 WL 5964484, at *2 (D. Md. Nov. 7, 2013), the Court reasoned that dismissing the other respondents except the director of the detention center was proper because petitioner was solely seeking habeas relief and not challenging his underlying removal proceedings. *Thakur*, 2013 WL 5964484, at *2 (D. Md. Nov. 7, 2013) (citing *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.")). But the *Thakur* Court dismissed the underlying petition and denied the underlying relief, so dismissal of the government respondents amounted to a formality. *Id.* at *3.

Petitioner here is not "pending deportation" because he is not subject to a final order of removal. Nonetheless, the Court finds the Supreme Court's caveat in *Padilla* reaches this case. *Cf. Kholyavskiy v. Achim*, 443 F.3d 946, 952 n.7 (7th Cir. 2006) ("The Supreme Court [in *Padilla*] expressly reserved the question of whether the immediate custody rule applies in the context of *immigration habeas petitions*.") (emphasis added). Further, after finding Mr. Jarpa's continued detention unreasonable, this Court must consider the association between the substantive relief an immigrant detainee seeks and the person with the requisite authority to provide such relief.

Applying the immediate custodian rule here would yield the "impractical result" of having the immediate custodian (the Warden of a detention facility) unable to grant the relief requested. *Sanchez-Penunuri*, 7 F. Supp. 3d at 1148. Rather, the relief sought can only practically be delivered by the head of the agency in charge of interpreting and executing the immigration laws. *Id.* Based on this rationale, other courts have determined that the Attorney General, DHS Secretary, and/or ICE District Director to be proper respondents. *See, e.g.*, *Carmona v. Aitken*, No. 14-CV-05321-JSC, 2015 WL 1737839, at *3 (N.D. Cal. Apr. 10, 2015) (finding both the Attorney General and the DHS Secretary are proper respondents); *Sanchez-Penunuri*, 7 F. Supp. 3d at 1148 (finding either Attorney General or DHS Secretary proper respondent); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) (finding ICE District Director a proper respondent); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 494 (S.D.N.Y. 2009) (naming both the Secretary of DHS and the Attorney General as respondents in a constitutional challenge to immigration detention); *Abner v. Sec'y of Dep't of Homeland Sec.*, No. 06CV308(JBA), 2006 WL 1699607, at *3 (D. Conn. June 19, 2006) (naming the District Director); *Somir v. United States*, 354 F. Supp. 2d 215, 217-18 (E.D.N.Y. 2005) (concluding that

the near complete control the Attorney General possesses over noncitizens facing deportation renders him proper respondent). *See also Bogarin-Flores v. Napolitano*, 12-CV-0399-JAH-WMC, 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012) ("it would be counter-productive to place the responsibility of responding to the instant petition upon" the warden of the private detention facility where petitioner resided).

The DHS Secretary possesses statutory authority to affect the detention and removal of noncitizen detainees, and thus, possesses legal authority over Mr. Jarpa. 6 U.S.C. §§ 202(3), 251(2); *see also Sanchez-Penunuri*, 7 F. Supp. 3d at 1150 (D. Colo. 2013) (citing *Armentero v. I.N.S.*, 340 F.3d 1058, 1072 (9th Cir. 2003), *reh'g granted, opinion withdrawn*, 382 F.3d 1153 (9th Cir. 2004), *opinion after grant of reh'g*, 412 F.3d 1088 (9th Cir. 2005)). Likewise, the Attorney General possesses complete statutory authority to detain noncitizens, (8 U.S.C. § 1226(c)(1) ("The Attorney General shall take into custody . . .")), remove convicted noncitizens ( 8 U.S.C. § 1227(a)), and grant or deny them discretionary relief. *Henderson,* 157 F.3d 106 at 125-26 (internal citations and quotation marks omitted); *see also Somir*, 354 F.Supp.2d at 217-28 ("[T]he near total control exercised by the Attorney General over aliens facing exclusion and deportation proceedings makes the Attorney General a custodian of these individuals within the meaning of the general habeas statute."). Consequently, this Court finds that Respondents Secretary Johnson and Attorney General Lynch should remain in the instant petition. *See Serna v. Sec'y of the Dep't of Homeland Sec.*, No. 06cv308 (JBA), 2006 WL 1699607, at *3, 2006 U.S. Dist. LEXIS 40317, at *8 (D. Conn. June 19, 2006).

Having found that both the Attorney General and the DHS Secretary to be proper respondents because the immediate custodian rule does not apply, it is unnecessary to reach whether the remaining respondents are properly in this action. *See, e.g.*, *Carmona v. Aitken*, No.

14-CV-05321-JSC, 2015 WL 1737839, at *3 (N.D. Cal. Apr. 10, 2015). What is more, given

Respondent Mumford, as Warden of the Worchester County Detention Center, is a proper party,

venue in this Court is proper on that basis alone. *See* 28 U.S.C. § 102; 28 U.S.C. § 1391(e).

Finally, at least one of the named Respondents can provide Mr. Jarpa with the requested

discretionary relief. Thus, even if the additional persons named in the Petition are unnecessary

respondents, any error would be harmless.

## V.       CONCLUSION

Mr. Jarpa has been held in ICE custody for nearly one year, despite his current lawful

status as an asylee. Today, he would be home with his family but for the Government's appeal of

his lawful status. In this particular case, Petitioner's continued detention without affording him

an individualized bail hearing has become unreasonable and, absent a further showing from the

Government, unjustified. *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). Accordingly,

the Court will DENY Respondents' Motion to Dismiss and will GRANT Mr. Jarpa's request for

habeas relief. The Court directs the Government to provide Mr. Jarpa an individualized bond

hearing within 10 days of the filing date of this Opinion, where the Government must prove by

clear and convincing evidence that Mr. Jarpa is a flight risk or a danger to the community to

justify denial of bond.


 9/30/2016                                                     /S/
Date                                             Paula Xinis
                                                 United States District Judge